JOHN F. HEATH, ET AL. *v.* MAYOR AND CITY
COUNCIL OF BALTIMORE, ET AL.

[No. 21, October Term, 1946.]

*Decided November 22, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*John F. Heath* for the appellants.

Submitted on brief by *Simon E. Sobeloff, City Solicitor,* and *Hamilton O'Dunne, Assistant City Solicitor,* for the appellee, Mayor and City Council of Baltimore.

*John O. Herrmann,* with whom was *Jacob S. New* on the brief, for the appellee, *Walter Scott.*

DELAPLAINE, J., delivered the opinion of the Court.

On January 23, 1946, Porter T. Bond, architect, applied to the Buildings Engineer of the City of Baltimore for a permit to erect a two-car garage for Walter Scott in the rear of his apartment house at 5717 Roland Avenue. The Buildings Engineer disapproved the application, and Scott appealed to the Board of Zoning Appeals. On February 5, the date set for a public hearing, no one appeared before the board except the architect. The board thereupon passed a resolution stating merely that it had "made a study of the premises and neighborhood" and approved the application. On February 28 John F. Heath and William Hugh Bagby, residents of Roland Avenue, filed a petition in the Baltimore City Court alleging (1) that the premises had not been posted in accordance with the rules of the Board of Zoning Appeals, and hence due notice of the hearing had not been given, and (2) that erection of the proposed garage would violate the Baltimore City Zoning Ordinance for the reason that the building would not conform with the architectural design of the neighborhood. However, the Court affirmed the resolution. The objectors then appealed to this Court.

We find no merit in the contention that the property had not been properly posted. The State Zoning Enabling Act, Acts of 1927, Ch. 705, Code 1939, Art. 66B, Sec. 7, and the Baltimore City Zoning Ordinance, Ordinance 1247, approved March 31, 1931, paragraph 32(f), both empower the Board of Zoning Appeals to adopt appropriate rules, fix a reasonable time for the hearing of appeals, and give public notice thereof as well as due notice to the parties in interest. In 1933 the Board adopted the rule that premises shall be posted in accordance with the following specifications: (a) The sign shall be not less than four feet long and three feet high, with black lettering not less than two inches high, on white background; (b) the sign shall be posted in a conspicuous manner, not over ten feet above the ground level, and where it will be clearly visible and legible to the public; and (c) the sign shall be posted not later than ten days prior to date of the hearing, and shall be maintained in good condition until after the hearing. The first objection of appellants was that the color of the sign was pale green, instead of white. We do not consider this slight departure from the strict letter of the rule to be a jurisdictional defect invalidating the permit. Mere irregularities in an application to a board for a permit not amounting to a jurisdictional defect do not affect the validity of the permit. A substantial compliance with the requirements of an administrative regulation in making an application for a permit is sufficient. *People v. Village of Oak Park*, 268 Ill. 256, 109 N. E. 11; *State ex rel. Grimmer v. City of Spokane*, 64 Wash. 388, 116 P. 878. Appellants then complained that the sign was not "clearly visible and legible to the public." They said that it could not be seen by pedestrians from every angle on account of a hedge fence on the lawn. Yet it appears that it could have been seen by anyone walking south on Roland Avenue, and in our opinion it complied substantially with the rule. The members of the board inspected the premises, saw the sign, and apparently were satisfied with it. Appellants also questioned

whether the sign had been posted for the period of ten days in compliance with the third requirement. The architect testified that he posted the sign on January 26, ten days prior to the date of the public hearing, and Scott certified that the sign had been posted on his premises in accordance with the instructions. Scott was out of the city when the sign was posted, but he had employed the architect to secure the permit, and in reliance on the architect's veracity he had the right to certify that the sign had been duly posted. Mrs. Scott, in corroboration, testified that, while she was not at home on January 26, she saw the sign after she returned. It appears that Heath did not testify in the Baltimore City Court, but Bagby and two other witnesses said they did not see the sign between January 26 and February 5. Negative testimony of this kind does not disprove the positive testimony that the sign had been posted for the period of ten days in accordance with the rules of the board.

We come now to the vital question whether the Board of Zoning Appeals has the power to authorize erection of the garage. The increasing need for garages in the cities was one of the main reasons for the rapid spread of zoning in this country. Instances were numerous where an entire block of houses had been made undesirable by the erection of a garage equipped with repair facilities and accommodations for the storage and sale of gasoline and oil. Paragraph 8 of the Baltimore City Zoning Ordinance excludes garages from residential use districts, but this general exclusion is qualified by paragraphs 13 and 14, which relate to private garages without repair facilities and without storage or sale of inflammable liquids. Paragraph 13 provides:

"Garages. The use, without repair facilities and without storage or sale of inflammable liquids, of—

"(a) a building, covering not more than 600 square feet of a lot, for housing not more than three automobiles, shall not be excluded by the residential use provisions of this ordinance;

"(b) space, not exceeding 600 square feet in area, for housing not more than three automobiles within a building used as a dwelling, shall not be excluded from residential use districts."

It is our opinion that the Mayor and City Council intended "a building" and "space" authorized by paragraph 13 to be alternatives. It is customary for the owner of a modern home to provide either a separate garage building or space for his automobiles in the basement of his house, but not both. In other words, an owner is entitled to house three automobiles without asking for the approval of the Board of Zoning Appeals. In the pending case the apartment house is a two-story building erected in 1930 before the passage of the present ordinance, and the owner has a basement garage accommodating four automobiles, one more than allowed by paragraph 13. In 1943 he applied for a permit to erect a one-car garage, and the Board of Zoning Appeals disclosed its administrative interpretation of the ordinance by stating that the erection of a separate garage building would require its approval in this case. In issuing permits the Buildings Engineer must follow strictly the provisions of the zoning regulations. Chaos would result if he were allowed to make exceptions or variances in his own discretion.

Paragraph 14, on the other hand, gives discretionary power to the Board of Zoning Appeals to make special exceptions. This paragraph provides:

"Garages—Special Exceptions. The Board of Zoning Appeals may, after public notice and hearing, in its discretion, in a specific case, and subject to the provisions, restrictions, guides and standards set forth in paragraph 32(j), permit in a residential use district,—

"(a) a garage * * * in a rear yard;

"(b) a garage * * * which is not within 75 feet of any street, and which is not in a rear yard;

"(c) a garage * * * on or under the surface of the lot occupied by a building used as a hotel or apartment house;

"(d)   a space, to be used as a garage * * * within a building used as a hotel or apartment house."

The discretionary power of the Board of Zoning Appeals to allow special exceptions by permission of paragraph 14, if valid, is subject to the limitations imposed by paragraph 32(j), as mentioned in paragraph 14. This amendment was enacted by the Mayor and City Council by Ordinance 449, approved April 23, 1941, to meet the objection of unconstitutionality. The Standard State Zoning Enabling Act, recommended in 1924 by Herbert Hoover, then Secretary of Commerce, provided that variances from zoning regulations might be made by the Board of Zoning Appeals in order to avoid "practical difficulties and unnecessary hardship." This rule embodied in the Standard Act was adopted throughout the United States. But in 1931 the Supreme Court of Illinois in *Welton v. Hamilton*, 344 Ill. 82, 176 N. E. 333, held that the law authorizing the Board of Zoning Appeals to modify provisions of the zoning ordinance in case of practical difficulties or unnecessary hardship was an unconstitutional delegation of legislative power. That decision took away the board's power to vary the strict letter of the law in exceptional cases, and placed Illinois in virtually the same situation as California, Oregon and Washington, where the Legislature had made no provision for a board of appeals, and thereafter spot zoning was resorted to in order to meet exceptional situations. In 1933 the Maryland Court of Appeals likewise held that grant of unlimited and unregulated discretion to the Board of Zoning Appeals to set aside an ordinance in any case was an arbitrary and unlawful delegation of power. *Jack Lewis, Inc., v. Mayor and City Council of Baltimore,* 164 Md. 146, 164 A. 220; *Sugar v. North Baltimore Methodist Protestant Church,* 164 Md. 487, 495, 165 A. 703. In 1941 the Mayor and City Council of Baltimore, in order to meet the objection of unconstitutionality, amended the Zoning Ordinance by adding paragraph 32(j). This paragraph empowers the Board of Zoning Appeals to make special exceptions or variances

only where the proposed building alteration, or use "shall not create hazards from fire or disease, or shall not menace the public health, security, or morals." It then provides that the board, in passing upon applications for special exceptions or variances as to use, height, or area, shall give consideration to the various factors enumerated in Section 1.

An application for a special exception or variance is an appeal primarily to the discretion of the Board of Zoning Appeals, conferred upon it by the ordinance. It necessarily assumes the validity of the ordinance, for a successful attack upon the validity of the ordinance destroys the foundation of any discretion conferred by the statute. *Arverne Bay Construction Co. v. Thatcher,* 278 N. Y. 222, 15 N. E. 2d 587, 117 A.L.R. 1110. On this appeal there is no need to discuss the constitutional validity of paragraph 14 except to say that an ordinance which delegates a part of the police power to a zoning board may be valid, even though it confers upon the board a certain discretion in the exercise of that power, provided that its discretion is sufficiently limited by rules and standards to protect the people against any arbitrary or unreasonable exercise of power. *Tighe v. Osborne,* 150 Md. 452, 133 A. 465, 46 A.L.R. 80. Compare *Chayt v. Board of Zoning Appeals,* 177 Md. 426, 9 A. 2d 747.

The Board of Zoning Appeals is an administrative agency, and it acts in a quasi judicial capacity in that it hears facts and makes decisions based thereon. One of its functions is to grant special exceptions or variances in exceptional cases. An "exception" within the meaning of a zoning ordinance is a dispensation permissible where the Board of Zoning Appeals finds existing those facts and circumstances specified in the ordinance as sufficient to warrant a deviation from the general rule. Application of *Devereux Foundation,* 351 Pa. 478, 41 A. 2d 744. In the exercise of its discretion in allowing a special exception or variance, the board must act in conformity with the rules of conduct pre-

scribed by the Legislature or by the City Council acting with the sanction of the Legislature. *Board of Zoning Appeals v. McKinney*, 174 Md. 551, 560, 199 A. 540, 117 A.L.R. 207. Although the board grants or withholds valuable privileges in accordance with its finding from the facts, it has no judicial powers, and the hearing before it is not a judicial proceeding. *Dal Maso v. County Com'rs of Prince George's County*, 182 Md. 200, 34 A. 2d 464.

The Enabling Act provides that any person aggrieved by any decision of the Board of Zoning Appeals may present to a court of record a petition setting forth that such decision is illegal, in whole or in part, and specifying the grounds of the illegality. The Court may reverse or affirm, wholly or partly, or may modify the decision brought up for review. Code 1939, Art. 66B, Sec. 7. The Baltimore City Zoning Ordinance, paragraph 35, repeats the authorization and designates the Baltimore City Court as the court of record. *Ellicott v. Mayor and City Council of Baltimore*, 180 Md. 176, 23 A. 2d 649; 149 A.L.R. 297; *Colati v. Jirout*, 186 Md. 652, 47 A. 2d 613. It is well established that the Court will not substitute its discretion for that of the board. The function of the board is to exercise the discretion of experts, and the Court, although it may not arrive at the same conclusion, will not disturb a decision on review where the board has complied with all legal requirements of notice and hearing, and the record shows substantial evidence to sustain the finding. However, the decisions of the board are reviewable, not only when there has been an erroneous interpretation of the law, but also when they impair personal or property rights by reason of an arbitrary or unlawful exercise of discretion. Just as the courts are without authority to interfere with the exercise of legislative prerogative within constitutional limits or with the lawful exercise of administrative authority, so the legislature is without authority to divest the courts of their inherent power to review the actions of administrative boards in order to determine whether

they unlawfully impair personal or property rights. *Heaps v. Cobb,* 185 Md. 374, 45 A. 2d 73. A statutory provision for a public hearing implies both the privilege of introducing evidence and the duty of deciding in accordance with the evidence, and it is arbitrary and unlawful to make an essential finding without supporting evidence. This is especially true in zoning cases, where equality and uniformity of operation within a particular zone as to each type of building are basic in the statute. Invidious distinctions and discriminations are not permissible. The very essence of zoning is territorial division according to the character of the land and the buildings, their peculiar suitability for particular uses, and uniformity of use within the zone. *County Com'rs of Anne Arundel County v. Ward,* 186 Md. 330, 46 A. 2d 684.

Assuming paragraph 14 to be valid, we nevertheless find it necessary to reverse the order of the Court. For, in passing on an application for a special exception in a residential use district, the Board of Zoning Appeals must take into consideration all pertinent factors enumerated in Section 1, such as fire hazards, traffic problems, transportation requirements and facilities, streets and paving, and schools, parks and playgrounds, and its action must be reasonable in the light of these and all other pertinent facts. In this case the board announced merely that it had "made a study of the premises and neighborhood," and there was no supporting evidence upon which to base a rational judgment. We will, therefore, reverse the order of the court below and remand the case with the direction that the resolution of the board be reversed.

*Order reversed and case remanded, with costs.*