## MAYOR AND CITY COUNCIL OF BALTIMORE ET AL. *v.* BYRD ET AL.

[No. 34, October Term, 1948.]

*Decided December 9, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*Hamilton O'Dunne, Assistant City Solicitor of Baltimore,* with whom was *Thomas N. Biddison, City Solicitor of Baltimore,* on the brief, for the appellants, Mayor and City Council of Baltimore.

*Hall Hammond,* with who was *H. Clifton Owens* on the brief, for the appellant, Neilson Sigler.

*Southey F. Miles* and *Douglas H. Gordon* for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

As originally passed, Ordinance No. 1247 of the Mayor and City Council of Baltimore, known as the Zoning Ordinance, provided in Paragraph 34 that a filling station for the sale of inflammable liquids should be permitted only by authority of public ordinance of the Mayor and City Council, even in a district where such use of property was not prohibited by the general use regulations. Under this provision numerous ordinances were passed by the Mayor and City Council permitting the erection of filling stations in various parts of the city, but this method was subsequently abandoned, and by Ordinance No. 318, approved January 16, 1937, the Board of Zoning Appeals was given authority to pass upon applications for permits for filling stations, but their action was limited by the following proviso: "Provided, however, no building or structure of any kind shall hereafter be erected, altered or used for the sale of gasoline, or any other motor fuel, on any lot or premises where any of the boundaries of such lot or premises are within three hundred (300) feet of the boundary line of any public park, public square, or public playground or of any building or structure used as a church, orphanage, school, theatre or motion picture theatre in the City of Baltimore, or within six hundred feet (600) of any building or structure used as a public hospital in said City."

In the latter part of 1947, an ordinance, No. 117, was passed by the Mayor and City Council which attempted to waive the provisions of paragraph 34 of Ordinance No. 1247, as the same was amended by Ordinance No. 318, prohibiting the erection of any structure for the sale of gasoline within 300 feet of a motion picture theatre or a church in so far as said provisions applied to the premises of the Safe Deposit and Trust Co. of Baltimore, Trustee under the will of Ida V. Megary, at the southwest corner of Liberty Heights Avenue and Hillsdale Road. This ordinance, as first introduced, contained no "whereas" clause. It was submitted to the City Solicitor, who advised that in his opinion the legality of

the ordinance would depend on the question whether the exception was required because of the peculiar conditions of the lot, or because it was necessary for the public good. He stated that excepting the lot from the provisions of the ordinance merely as a favor to the owner would be illegal, and he suggested that in the event there was a valid basis for the passage of the waiving ordinance, it might be well to state this basis by means of "whereas" clauses. After receipt of this opinion the ordinance was changed so as to insert the following preamble: "Whereas, traffic conditions in the neighborhood of Gwynn Oak Avenue and Liberty Heights Ave. are frequently congested due to the lack of strategically located filling stations and parking space; and

Whereas, the establishment of a filling station with generous parking facilities at the southwest corner of Liberty Heights Avenue and Hillsdale Road would tend to relieve congested traffic in that immediate neighborhood; and

Whereas, the relief of congested traffic conditions in any section of the City of Baltimore is a contribution to the safety, welfare and happiness of the people of Baltimore." After the passage of the ordinance, application was made by C. G. Neilson Sigler, one of the appellants, for the construction of a one story automobile sales and service building with four 40-barrel gasoline tanks, six pumps, signs and floodlights at 4601 Liberty Heights Avenue, which was the property described in Ordinance No. 117. Mr. Sigler, who was the lessee of the property, was granted a permit by the Board of Municipal and Zoning Appeals, after a public hearing, at which some of the appellees protested. The latter then were allowed an appeal by the Baltimore City Court, and the Women's Civic League, Inc. was permitted to become a party plaintiff with the appellees by order of court. After a hearing, the court reversed the action of the Board of Municipal and Zoning Appeals, and from this action, the Mayor and City Council of Baltimore and Mr. Sigler appealed.

It is suggested that as the appellees do not live in the neighborhood, they have no interest in the question. However, paragraph 35 of Ordinance 1247 permits any tax payer to present to the Baltimore City Court a petition setting forth that a decision of the Board of Zoning Appeals is illegal, and on such petition the court may allow an appeal. The question raised in this case is the validity of Ordinance No. 117, which is not a question which affects solely the property in question, but is one which concerns the right of the Mayor and City Council to make special exceptions to the Zoning Ordinance. That is a matter that vitally affects tax payers everywhere in the City, and by the express provision of the Zoning Ordinance, the appellees are authorized to become parties to the case, and take the appeal to the Baltimore City Court, and to defend the appeal here from that Court. The fact that no near neighbors object does not affect the right of the appellees to protest under the Ordinance.

The broad question in this case is how far the Mayor and City Council may make special exceptions to the Zoning Ordinance, and the narrower question is whether their action in passing Ordinance No. 117 is a valid exercise of such power as they may have to make exceptions. Zoning is an exercise of the police power which, for the public good, takes away some of the rights of individuals to use their property as they please, and at the same time gives them rights to restrict injurious uses of the property of others. This cannot be done by piecemeal legislation. It can only be upheld as part of a general plan for a community which sets apart certain areas for residence purposes, and permits commercial business in other areas where it is established or where such use is obviously suitable. Such a plan must be attuned to the public health, welfare and safety. It must not be arbitrary nor can it be discriminating, except insofar as is necessary for the proper establishment of the various kinds of districts permitted. In the enabling Act, authorizing zoning by the legislative bodies of citizens of incorporated towns containing more than 10,000 inhabitants, codified

as Article 66B of the Annotated Code, by Section 2, authority is given the local legislative bodies to divide their municipalities into districts and within such districts, to regulate and restrict the erection or use of buildings, structures or land. All such regulations must be uniform for each class or kind of building throughout any district, but the regulations in one district may vary from those in other districts. The purposes of such regulations are set out in Section 3, and it is stated that they shall be made in accordance with a comprehensive plan.

In the Baltimore City Zoning ordinance are provisions for non-conforming uses which existed at the time of its passage, and there are also provisions for extension of these uses. We have held that these last provisions should be strictly construed, as the intention of the ordinance is not to allow them to multiply. *Colati v. Jirout,* 186 Md. 652, 47 A. 2d 613. This conclusion is based upon the same general conclusion that has been present in all of the zoning cases decided by this Court, that is that when the legislative body of a municipality adopts a comprehensive zoning plan, exceptions should be allowed only in such cases as are clearly exceptions in fact to the purposes of the ordinance, and without which there would be imposed a burden upon the owner of the property not justified by consideration of the public health, safety or welfare. *Sugar v. North Baltimore Methodist Protestant Church,* 164 Md. 487 at pages 493, 494, 165 A. 703; *Ellicott v. Mayor and City Council of City of Baltimore,* 180 Md. 176 at page 183, 23 A. 2d 649. The appellants contend that the Mayor and City Council may, in a proper case, exercise the power of making exceptions, and we agree that they have the power, provided the conditions are such as would justify its exercise. *Chayt v. Maryland Jockey Club,* 179 Md. 390, 18 A. 2d 856. The appellants aptly compare to a safety valve the power of making exceptions which permits in exceptional or unusual cases, the avoidance of the arbitrary or unreasonable. When we adopt this metaphor, however, it must be borne in mind that the safety valve is an emergency outlet.

The appellants claim that the lot in question is exceptional, and that its use as a filling station would not create any fire or traffic hazard, but on the contrary would be of benefit to the traffic centered there. They point out there are already filling stations on the opposite side of the street, within 100 feet of a theatre on one side of Liberty Heights Avenue and likewise within 100 feet of a theatre on the opposite side. In all, there are two filling stations closely adjacent to two moving picture theatres, subsequently and lawfully built, because there is no prohibition in the ordinance against building a theatre next to a filling station, although the reverse cannot be done. It is contended that the proposed filling station would give an opportunity to cars on that side of the street to get their supplies without crossing traffic, and that it is intended to have a considerable parking space on part of the lot which would take care of theatre patrons, and patrons of other businesses in the neighborhood, and thereby lessen traffic hazards. It seems to us, however, that these facts show no such exceptional conditions as would justify a waiver of an established rule which has been held proper and in the interest of the public for the whole city. The 300 foot rule was before this Court in the case of *Kramer v. Mayor and City Council of Baltimore*, 166 Md. 324, 171 A. 70, and it was there upheld. One of the grounds urged for the establishing of a filling station within 300 feet of a church was that the City Council refused to waive in that case, although they had passed numerous ordinances permitting filling stations within 300 feet of churches. It was also claimed that the proposed filling station would not be detrimental to the public health, safety or welfare. The Court said that the reservation to the Mayor and City Council of the right to establish filling stations was valid, and that the restriction placed upon the erection of one within 300 feet of a church building was also valid. It also said that the claims made by Kramer (the same as those in the instant case) did not include a claim that another

filling station would not be thus objectionable as an addition to existing stations.

It might readily be said of any given spot that the establishment of a filling station with parking facilities behind it would to some extent, relieve traffic. The parking facilities are not part of the permit in this case, and the right to use that portion of the lot not built on for parking may be withdrawn at any time. We have, therefore, to consider the question as if no parking facilities were promised or suggested. With this element out of the picture, there is nothing in the establishment of a filling station which will add to the public safety. It is by no means universally conceded, as the appellant argues, that the storage and use of gasoline does not constitute something of a fire hazard. The mere fact that insurance rates are low on filling stations is not, by any means, conclusive. As was pointed out in the *Kramer* case, *supra,* the filling stations already there may be sufficient for that community, and may have reached the limit of safety. In any event we cannot find that there is any public reason why this particular lot should be allowed a privilege which is denied to other lots similarly situated in the City. The policy has been established that no filling station shall be erected within 300 feet of a theatre. That is a general policy upheld here and elsewhere in the interest of the public health, safety and welfare. It is only where a situation arises in which the prohibition against a particular use is obviously not in the public interest and unjustly damages the lot owner that an exception can be made.

The appellants rely largely upon the case of *Ellicott v. Baltimore, supra,* which had to do with the rezoning of a particular lot as a first commercial district so that a filling station could be established thereon. In that case this Court said it found no peculiar condition in the lot sufficient to justify an exception, but it upheld the ordinance on the ground that the nearest filling stations were about one half mile to the West and a mile to the East, and there was steadily increasing traffic on Cold Spring

Lane and Greenspring Avenue, where the lot was located. The Court said that this might possibly create a public need for a filling station, and that in view of this possibility the Court would not determine that the action of the City authorities was arbitrary and capricious. We do not think the situations are parallel. It has not, to our mind, been shown that there is any public need for a filling station on the lot in question in this case, and we think the evidence produced goes no further than to show that no great harm would be done. We can only conclude that the ordinance was passed because of a desire to satisfy the owner of the lot. This is especially evident in view of the fact that the preamble reciting other reasons was inserted only after the City Solicitor had ruled that it might help the validity of the ordinance. Under the circumstances we do not think it does help it. We consider the passage of the ordinance as an arbitrary act by the Mayor and City Council, discriminating against other lots situated within 300 feet of theatres, and violating the principle of equality and conformity which is the basis of proper zoning. If such an ordinance could be passed in this case it could be passed for any other case where the members of the City Council are willing to insert similar preambles. It would in effect go back to the system, which has been abandoned, of having all filling station permits provided for by special ordinances. It is within the power of the Mayor and City Council to go back to such a method, but they must do it by an act which affects all properties in all parts of the City equally, and not by picking out particular lots and waiving the 300 foot provision as to them. As Judge Markell, speaking for this Court, aptly said in the case of *Benner v. Tribbitt*, 190 Md. 6, 20, 57 A. 2d 346, 353, "There is no magic in the word 'zoning', but there is a wide difference between exercise of the police power in accordance with a comprehensive zoning plan, which imposes mutual restrictions and confers mutual benefits on property owners, and arbitrary permission to A and prohibition to B

to use their own property, at the pleasure of neighbors or at the whim of legislative or administrative agencies."

In the recent case of *Kahl v. Consolidated Gas etc. Co.*, 191 Md. 249, 60 A. 2d 754, 758, we said, "The police power is not unlimited, and cannot be used to oppress". It is equally true that it cannot be used to favor. We think the ordinance is void.

*Order affirmed with costs.*

MARKELL, J., delivered the following dissenting opinion.

In zoning, as in other exercise of the police power, municipal legislative or administrative action which restricts individual rights and is without rational support in facts or substantial evidence or is otherwise arbitrary or capricious or is beyond a reasonable exercise of delegated authority is unlawful, and it is the duty of the courts so to hold. *Ellicott v. Mayor and City Council of Baltimore*, 180 Md. 176, 23 A. 2d 649; *Benner v. Tribbitt*, 190 Md. 6, 57 A. 2d 346; *Northwestern Merchants Terminal v. O'Rourke*, 191 Md. 171, 60 A. 2d 743; *Lewis v. Mayor and City Council of Cumberland*, 189 Md. 58, 54 A. 2d 319; *Heath v. Mayor and City Council of Baltimore*, 187 Md. 296, 49 A. 2d 799; *Heath v. Mayor and City Council of Baltimore*, 190 Md. 478, 58 A. 2d 896. However, the wisdom of legislative or administrative action is not a judicial question, and the presumption is, until the contrary is clearly shown, that such action is lawful, has a rational basis in facts or substantial evidence and is not arbitrary or capricious or unreasonable.

The Zoning Enabling Act requires that all use regulations shall be "uniform for each class or kind of buildings throughout each district, but the regulations in one district may differ from those in other districts", (Code, Art. 66B, sec. 2), and shall be made with "reasonable consideration" to the character of the district and its suitability for particular uses. Section 3. Perfect uniformity in zoning, like "perfect uniformity of taxation", is "a baseless dream". *Head Money Cases, Edge v. Robertson*, 112 U. S. 580, 595, 5 S. Ct. 247, 252, 28

L. Ed. 798. The statute does not require "uniformity" in districting. However, "spot zoning" is a term, in the vernacular of zoning not of law, applied to carving out one or a few properties in an existing district use and reclassifying them in a different district. *Chayt v. Maryland Jockey Club*, 179 Md. 390, 393, 394, 18 A. 2d 856. The evils of "spot zoning", like the evils of local legislation, are primarily political. They do not, as such, present legal or judicial questions except the question whether in a particular case the zoning transgresses the limits of the police power or the delegated authority, or is without rational basis or is arbitrary or capricious. It was squarely so held in the opinion of this court by Chief Judge Bond in *Ellicott v. Baltimore, supra*.

Long before the word "zoning" was heard of in law, the legality of required spot zoning was sustained by this court. *Commissioners of Easton v. Covey*, 74 Md. 262, 22 A. 266. *Cf. Farmers' & Planters' Co. v. City of Salisbury*, 136 Md. 617, 111 A. 112; *Pocomoke City v. Standard Oil Co.*, 162 Md. 368, 159 A. 902; *Engle v. Mayor and City Council of Cambridge*, 180 Md. 82, 22 A. 2d 922. "It would be very difficult, if not impossible, to draw a general ordinance which would accomplish all that is proper, without doing injustice to some, and we can see no reason why an applicant for a license should not be required to first get a permit from the Mayor and City Council." *Brown v. Stubbs*, 128 Md. 129, 135, 136, 97 A. 227, 229, referring to a Baltimore ordinance of 1913, requiring spot zoning of moving picture theatres, the word "zoning" not being used in the ordinance or the opinion. This ordinance of 1913 has apparently never been expressly repealed, but has been reenacted in the Baltimore Building Code of 1941 [ch. 14, par. 1400(a)], though it has apparently been ignored since the passage of the general zoning ordinance of 1931 notwithstanding the narrow repealing cause (sec. 1, par. 43) in that ordinance. The present zoning ordinance of 1931 required spot zoning of filling stations until the amendment of 1937 and still requires spot zoning of 30 specified uses.

Sec. 1, par. 4. The City of Baltimore found, by the general ordinance with respect to these 30 uses, and by the special ordinance in the instant case, that it still is "very difficult, if not impossible, to draw a general ordinance which would accomplish all that is proper, without doing injustice to some." "Neither zoning ordinances nor their application are immutable. That both the ordinances, their restrictions and the application thereof must be reasonable under the circumstances as to location, property and the surroundings as to which they apply is the law as stated by the Court of Appeals in two recent cases." *Ballard v. Roth,* 141 Misc. 319, 325, 253 N. Y. S. 6, 12, citing *People v. Connell,* 257 N. Y. 73, 177 N. E. 313; *Downey v. Village of Kensington,* 257 N. Y. 221, 177 N. E. 427, 86 A. L. R. 642, unanimous opinions, one by Judge (later Chief Judge) Crane, the other by Judge (later Chief Judge) Lehman, Chief Judge Cardozo participating in both. An ordinance general in its scope may be adjudged reasonable as applied to one state of facts and unreasonable when applied to circumstances of a different character. *Kramer v. Mayor and City Council of Baltimore,* 166 Md. 324, 333, 171 A. 70; *2 Dillon on Municipal Corporations,* 5th Ed., Sec. 591; *Ellicott v. Baltimore, supra.* Neither the municipality of Baltimore (within its broad legislative field) nor the courts (within the narrower scope of judicial review) can divest themselves of the power and duty of considering the facts of each case, by putting the entire city into a Procrustean bed exactly 300 feet long. As has often been said, refusal to discriminate between things that are unlike is as unjust discrimination as discrimination betwen things that are alike.

In *Ellicott v. Baltimore, supra,* it was held that after adoption of a general ordinance spot zoning of one lot by special ordinance would be a departure from the purpose of the enabling act and would be illegal unless made because of some exceptional conditions, under authority of the enabling act, and no valid exception can be made of one lot merely as a favor to the one owner. By a liberal

application of the presumption in favor of the reasonableness of a municipal ordinance such exceptional conditions were found. The question now presented is whether there are such (not necessarily the same) exceptional conditions in the instant case, *i. e.*, conditions which the municipality might reasonably regard as justifying the exception made. Manifestly there are.

If this case is not unique, certainly it is exceptional, in that the purpose of the 1937 ordinance to prevent proximity of filling stations and moving picture theatres has already been frustrated in the block in question by the erection of two moving picture theatres closely adjacent to two filling stations. Whether this result is due to inadvertence, in repealing the 1913 ordinance (if it was repealed) and failing to make the 1937 prohibition mutual instead of one-sided or to failure to enforce the 1913 ordinance or the 1941 Building Code or to some other reason is immaterial. In any aspect it was the right and duty of the municipality to consider conditions as they are in acting upon the special 1947 ordinance. It might well have been argued that in the circumstances refusal to make the exception asked would have been arbitrary, capricious, unjust discrimination and would have invalidated the 1937 ordinance as applied to these circumstances. Even if the presumption in favor of legislative judgment might have required us to sustain such a refusal because the municipality might possibly have determined that one more filling station in this locality would be one too many (*Kramer v. Baltimore, supra*), the same presumption now requires us to sustain the legislative judgment that one more would not be too many and that the facts do not warrant refusal to apply the axiom A plus B is equal to B plus A. We might sustain the action or non-action of the municipality but cannot invalidate this ordinance against the judgment of the municipality by assuming a possibility that "the filling stations already there may be sufficient for that community and may have reached the limit of safety".

Moreover, the ordinance recites in a preamble that "the establishment of a filling station with generous parking facilities" at this location "would tend to relieve congested traffic in that immediate neighborhood", and this recital is supported by substantial evidence. It is true that the parking facilities may be withdrawn at any time. But the ordinance is expressly predicated on them, and if they are withdrawn the ordinance, now valid, may become invalid or inoperative under the changed conditions created by such withdrawal. *Kramer v. Baltimore, supra; People v. Connell, supra.* Even the technical difference between a covenant and a condition is not confined to real estate law, if indeed zoning is not a branch of real estate law. Of course, the municipality could not lawfully discriminate, and we cannot assume that it would attempt to do so, by "inserting a similar preamble" in other ordinances, if the preamble were not in accord with the facts.

Moreover, the double fact, (1) that nobody is injured by the exception made by this special ordinance and (2) that appellees have no justiciable interest in the question whether the ordinance is valid or invalid, both (1) is an exceptional condition which justifies the exception made by the ordinance and (2) disqualifies appellees from attacking the ordinance. A statute or an ordinance cannot be held invalid *in vacuo*, but only in a case between parties who have a justiciable interest in the question of validity. There is no evidence that there is any other lot in Baltimore similarly situated. The individual appellees, who live in distant parts of Baltimore, have no more justiciable interest in the question of the validity of this ordinance than a resident of Cumberland. They do not own property in the neighborhood or own or operate or propose to own or operate a filling station in the neighborhood or anywhere else. The ordinance imposes no expense or loss on the city which might affect them as taxpayers. They have no standing, as *parens patriae,* to protect the neighbors because, they say, the neighbors

"don't know what is good for them" or to preserve the verbal symmetry of the general ordinance.

The general zoning ordinance gives "all parties in interest" the right to testify at the public hearing before the Board of Zoning Appeals on an application for a filling station permit (sec. 1, par. 34-B), and both the enabling act and the ordinance give a right of appeal to a court to "any person or persons jointly or severally aggrieved by any decision of the Board of Zoning Appeals, or any taxpayer, or any officer, department, board or bureau of the municipality". Art. 66B, sec. 7; ordinance, sec. 1, par. 35. It has been held that under such a provision in a zoning statute or ordinance a "person aggrieved" is a person "interested" in, *i. e.*, affected by the action of the board. *American Can Co. of Massachusetts v. Milk Control Board,* 313 Mass. 156, 160, 46 N. E. 2d 542; *Fidelity Trust Co. v. Downing,* 224 Ind. 457, 463, 68 N. E. 2d 789. In *Ellicott v. Baltimore, supra,* there is an intimation that the class of persons who may appeal from the board may be broader than the class of taxpayers and property owners specially injured who may sue in equity. But in that case the appeal was actually taken by owners of property in the neighborhood "and a taxpayer". No case has been cited, and I have found none, in which a right of appeal to "a taxpayer" has been construed as including taxpayers not interested or affected as such, and as giving any taxpayer a roving commission to litigate any abstract zoning question in which he is not interested or affected as a taxpayer. So far as the corporation appellee is concerned we have just reiterated the rule that a corporation has no standing to litigate a question which affects the members of the corporation but not the corporation itself. *Maryland Naturopathic Association v. Kloman,* 191 Md. 626, 62 A. 2d 538.

I think the judgment should be reversed and the appeal to the Baltimore City Court dismissed and the action of the Board of Zoning Appeals affirmed.