CASSEL ET UX. *v.* MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

[No. 172, October Term, 1949.]

350

*Decided May 11, 1950.*

*Motion for reargument and petition to stay mandate filed June 12, 1950. Both denied June 14, 1950.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*C. Arthur Eby* for the appellants.

*Hamilton O'Dunne, Assistant City Solicitor,* with whom were *Thomas N. Biddison, City Solicitor,* and *Edwin Harlan, Deputy City Solicitor,* on the brief, for the appellees the Mayor and City Council and the appellee Paul A. Cohen in his two capacities.

*W. Frank Every* for the appellees Ellsworth Armacost and Marion P. Armacost, his wife.

DELAPLAINE, J., delivered the opinion of the Court.

This suit in equity was instituted by seven residents of the Howard Park section of Baltimore (1) to annul Ordinance 632, approved April 1, 1949, which amends the Baltimore City Zoning Ordinance by reclassifying the property at 5118 Gwynn Oak Avenue, owned by Ellsworth Armacost and his wife, from residential to first commercial use district for the purpose of permitting them to conduct a funeral home on the premises, (2) to direct Paul A. Cohen, Buildings Engineer, to revoke the permit issued to them to use the property as a funeral home, and (3) to restrain them from using the property as such.

One complainant died prior to the trial. Four withdrew from the case. The remaining two, R. Vernon Cassel and his wife, appealed here from the Court's decree dismissing the bill of complaint.

It is an established rule that a court of equity has the power to restrain the enforcement of a void statute or ordinance at the suit of a person injuriously affected. *Spann v. Gaither,* 152 Md. 1, 136 A. 41, 50 A. L. R. 620; *Jewel Tea Co. v. Town of Bel Air,* 172 Md. 536, 192 A. 417; *Davis v. State,* 183 Md. 385, 37 A. 2d 880. It is also held that a court of equity has jurisdiction to grant injunctive relief against the violation of a zoning ordinance on the complaint of an individual sustaining special damage as a result of such violation. *Fitzgerald v. Merard Holding Co.,* 106 Conn. 475, 138 A. 483, 54 A. L. R. 361; *Stokes v. Jenkins,* 107 N. J. Eq. 318, 152 A. 383; *Pritz v. Messer,* 112 Ohio St. 628, 149 N. E. 30; *Holzbauer v. Ritter,* 184 Wis. 35, 198 N. W. 852.

Appellants reside on Fernpark Avenue less than 100 feet from the property in dispute, which is situated on the northeast corner of Gwynn Oak Avenue and Fernpark Avenue. Though appellants cannot see the front of the funeral home, they can see the garage in the rear. As they are property owners residing within the residential use district in which the property in dispute was originally classified, they are proper parties to a suit attacking the validity of the amending ordinance and praying for an injunction against the use of the property as a funeral home.

Zoning is permissible only as an exercise of the police power of the State. When this power is exercised by a city, it is confined by the limitations fixed in the grant by the State and to the accomplishment of the purposes for which the State authorized the city to zone. These purposes are set forth in the State Zoning Enabling Act, which demands that zoning regulations shall be made in accordance with a comprehensive plan and designed "to lessen congestion in the streets; to secure safety from fire, panic, and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage,

schools, parks, and other public requirements." Laws of 1927, ch. 705, Code 1939, art. 66B, secs. 3, 21.

The test of invalidity of a zoning ordinance is whether it is arbitrary, unreasonable and discriminatory, and has no substantial relation to the public health, safety, morals, or general welfare. *Mayor and City Council of Baltimore v. Byrd,* 191 Md. 632, 62 A. 2d 588; *Wilbur v. City of Newton,* 302 Mass. 38, 18 N. E. 2d 365; *Strain v. Mims,* 123 Conn. 275, 193 A. 754. It is unquestioned that the City Council has the power to amend its City Zoning Ordinance whenever there has been such a change in the character and use of a use district since the original enactment that the public health, safety, morals, or general welfare would be promoted by a change in the regulations. Whether an ordinance amending the origi‑ nal zoning ordinance is a valid exercise of the police power is a proper subject for judicial review. It is the duty of the Court to annul such an ordinance if it is clearly arbitrary, unreasonable and discriminatory. *Simon v. Town of Needham,* 311 Mass. 560, 42 N. E. 2d 516, 141 A. L. R. 688; *Zahn v. Board of Public Works of City of Los Angeles,* 274 U. S. 325, 47 S. Ct. 594, 71 L. Ed. 1074.

The State Zoning Enabling Act demands that all zon‑ ing regulations shall be uniform for each class or kind of buildings throughout each district, but the zoning regulations in one district may differ from those in other districts. Code 1939, art. 66B, secs. 2, 21. The regula‑ tions for the use of property within the various use districts are supported upon the basic theory that they apply equally and uniformly within the district affected. Invidious distinctions and discriminations in zoning can‑ not be allowed, for the very essence of zoning is territorial division according to the character of the land and the buildings, their peculiar suitability for particular uses, and uniformity of use within the use district. *Sugar v. North Baltimore Methodist Protestant Church,* 164 Md. 487, 494, 165 A. 703; *Heath v. Mayor and City Council of Baltimore,* 187 Md. 296, 305, 49 A. 2d 799.

"Spot zoning," the arbitrary and unreasonable devotion of a small area within a zoning district to a use which is inconsistent with the use to which the rest of the district is restricted, has appeared in many cities in America as the result of pressure put upon councilmen to pass amendments to zoning ordinances solely for the benefit of private interests. While the City Council has wide discretion in enacting zoning ordinances, it has no authority to place restrictions on one person's property and by mere favor remove such restrictions from another's property, unless there is reasonable ground for the discrimination. Moreover, increase in "spot zoning" in course of time would subvert the original soundness of the comprehensive plan and tend to produce conditions almost as chaotic as existed before zoning. It is, therefore, universally held that a "spot zoning" ordinance, which singles out a parcel of land within the limits of a use district and marks it off into a separate district for the benefit of the owner, thereby permitting a use of that parcel inconsistent with the use permitted in the rest of the district, is invalid if it is not in accordance with the comprehensive zoning plan and is merely for private gain. *Leahy v. Inspector of Buildings of City of New Bedford,* 308 Mass. 128, 31 N. E. 2d 436; *Jersey Triangle Corporation v. Board of Adjustment,* 127 N. J. L. 194, 21 A. 2d 845; *Polk v. Axton,* 306 Ky. 498, 208, S. W. 2d 497; *Page v. City of Portland,* 178 Or. 632, 165 P. 2d 280.

On the other hand, it has been decided that a use permitted in a small area, which is not inconsistent with the use to which the larger surrounding area is restricted, although it may be different from that use, is not "spot zoning" when it does not conflict with the comprehensive plan but is in harmony with an orderly growth of a new use for property in the locality. The courts have accordingly upheld the creation of small districts within a residential district for use of grocery stores, drug stores and barber shops, and even gasoline filling stations, for the accommodation and convenience of the residents of

the residential district. *Higbee v. Chicago, B. & Q. R. Co.*, 235 Wis. 91, 292 N. W. 320, 128 A. L. R. 734; *Marshall v. Salt Lake City*, 105 Utah 111, 141 P. 2d 704, 149 A. L. R. 282.

Somewhat similar to that rule is the rule enunciated by this Court in *Ellicott v. Mayor and City Council of Baltimore*, 180 Md. 176, 183, 23 A. 2d 649, 652, that the City Council has the power to make an exception to the Zoning Ordinance to relieve a certain lot from a restriction applicable to the use district where the exception is required either by the peculiar conditions of the lot or by the public good. In that case the Council had reclassified a lot at the corner of Green Spring Avenue and Cold Spring Lane for the purpose of permitting a filling station on the lot, and this Court upheld the ordinance on the ground that the residential area had remained in a rural condition and the filling station was "a public need," as motor vehicular traffic had been steadily increasing, and the nearest filling stations were a half mile to the west and a mile to the east. Chief Judge Bond, speaking for the Court, stated in that case: "So long as this district continues zoned for residential purposes, it must be dealt with as a residential district, and the segregation of a lot within it for a commercial use must be dealt with as a discrimination. Not all discriminations are, however, departures from the authority of the enabling act, or unconstitutional." Compare *Mayor and City Council of Baltimore v. Byrd*, 191 Md. 632, 62 A. 2d 588.

We now come to the specific question whether the City Council can discriminate in favor of a mortician by permitting him to conduct a funeral home in a locality which has long been zoned as residential. The rule adopted in other States, which we follow, is that an amendment to a municipal zoning ordinance that creates a separate commercial district of a single lot of ground to enable an individual to obtain a permit to use his residence on the lot as a funeral home is ordinarily invalid because it provides for unreasonable and discrimin-

atory "spot zoning" beyond the statutory power of the city. *Smith v. Board of Appeals of Salem,* 313 Mass. 622, 48 N. E. 2d 620; *Huebner v. Philadelphia Savings Fund Society,* 127 Pa. Super. 28, 192 A. 139; *Linden Methodist Episcopal Church v. City of Linden,* 113 N. J. L. 188, 173 A. 593; *Snow v. Johnston,* 197 Ga. 146, 28 S. E. 2d 270; *Mueller v. C. Hoffmeister Undertaking & Livery Co.,* 343 Mo. 430, 121 S. W. 2d 775.

We have found no facts in this record so extraordinary as to persuade us to withdraw the case from application of the accepted rule. The ordinance under review is a clear case of "spot zoning". The property in dispute is situated in an area that has been zoned as residential ever since the enactment of the City Zoning Ordinance in 1931. The amending ordinance contains a proviso that the premises shall be used only as a funeral home and that no embalming shall be done on the premises. However, Paragraph 8 of the City Zoning Ordinance explicitly provides that no land or building in a residential use district shall be used for "undertaking business or establishment or funeral home."

The amending ordinance reclassifies a single lot in a district where undertaking establishments are not permitted, thus establishing a permissive district within the restricted district. Armacost, who has been engaged in the undertaking business in Howard Park for some years, contracted to purchase the property in dispute upon the condition that if he could not secure a permit to use it as a funeral home, the contract would be rescinded. In January, 1949, after getting the approval of a number of residents of the neighborhood for the establishment of the funeral home, he had the proposed ordinance introduced in the City Council. A number of residents appeared before the Committee on Buildings and Building Regulations, and no objections were heard to the ordinance. Cassel declares that he was one of the opponents who appeared at the hearing, but that the proponents outnumbered the opponents, and he did not voice any objection because it seemed "rather futile." However

that may be, the ordinance was passed by the City Council in March, and eleven days after it was approved by the Mayor, the Buildings Engineer issued the permit.

At the trial of this case Cassel asserted positively that there is no need for a funeral home at 5118 Gwynn Oak Aveune.. He showed that the property in dispute is only three blocks from Woodbine Avenue, which is in a first commercial use district. Charles E. Delosier, secretary of the State Board of Funeral Directors, who was called to the stand by appellees, acknowledged that there are three other funeral homes within a radius of about ten blocks. Armacost testified that he spent a large sum of money to paint, paper and wire the house, but neither this fact nor the allegation that the funeral home will be a convenience for the tenants in nearby apartment houses is sufficient to save the ordinance. It was urged that there are about 20,000 inhabitants of the Howard Park section, but Armacost admitted that he has conducted only about two funerals a month from the funeral home since he opened it. It is impossible to avoid the conclusion that the ordinance is an arbitrary and unreasonable discrimination for the reason that it does not operate alike on all persons residing within the residential area. As we are convinced that the ordinance is beyond the statutory power of the City Council, we must declare it void. If a funeral home were permitted here, it might be an opening wedge for other enterprises in this and other residential districts of the city.

For these reasons we must reverse the decree dismissing the bill of complaint and remand the case for the passage of a decree granting the relief prayed for by appellants.

*Decree reversed and case remanded, with costs.*