MONTGOMERY COUNTY, MARYLAND *v.* MERLANDS CLUB, INC., ET AL.

[No. 150, October Term, 1952.]

280

*Decided April 17, 1953.*

282

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*John W. Neumann, Assistant County Attorney for Montgomery County,* with whom was *David Macdonald, County Attorney,* on the brief, for the appellant.

*Edward S. Northrop* and *Robert V. Smith,* with whom were *Lambert & Northrop* and *Smith, Ristig & Smith* on the brief, for the appellees.

HAMMOND, J., delivered the opinion of the Court.

On the representation of Montgomery County that the matter was one where "special circumstances render it desirable and in the public interest" that we hear the case, we required by *certiorari* to the Circuit Court for Montgomery County under the authority of Section 5, (V) of Article 25A of the Code (1951 Ed.) that the case be certified to us for review and determination. That Court had reversed the County Board of Appeals of Montgomery County, in its denial of a request to allow the use of certain land in a Residential A area as a private club.

The property involved is a tract of some twenty-three and a half acres known as "The Merlands", part of which abuts on Georgia Avenue west of Wheaton, Montgomery County, and which is near an area of rapidly growing population. Victor R. Messall owns the Merlands. He found that he could not profitably sub-divide it and filed an application for permission to use the property as a private club. The zoning ordinance for the regional district of Montgomery County, Chapter 176 Montgomery County Code (1950) does not allow the use of property for a private club unless it is in a Commercial

"D" zone or Industrial "E" zone. The ordinance prohibits the use of property as a private club in a residential zone but does contain provisions in Section 13 g of Chapter 176 as follows: "Upon appeals, the Board is hereby empowered to decide requests for and grant requests for the following special exceptions and decisions upon the following special questions when in the judgment of the Board such special exceptions and grants and decisions shall be in harmony with the general purpose and intent of the zone plan embodied in these Zoning Regulations and the Zoning Map, and will not tend to affect adversely the use and development of neighboring properties and the general neighborhood in accordance with said zone plan: (1) Permit, in any residential district, an aviation field, a radio broadcasting station, a private club, a country club as such is defined by existing State and county law applicable to Montgomery County, or an antique shop in residence of proprietor when operated as a home occupation".

The Department of Inspection and Licenses of Montgomery County, having denied his application, Mr. Messall applied to the County Board of Zoning Appeals for the granting of a special exception permitted by Section 13 g. The Board held a hearing on the application on May 1, 1952 and denied it three days later. On request, a re-hearing was held and Merlands Club, Inc. was substituted as the applicant. Two days later the Board again denied the application. A petition of appeal was filed with the Circuit Court under the authority of Section 5 (V) of Article 25A of the Code (1951 Ed.), under which the Court is given the power ". . . to affirm the decision of the board, or if such decision is not in accordance with law, to modify or reverse such decision, with or without remanding the case for rehearing as justice may require." There had been no objection and no protestants at either hearing. Montgomery County was granted leave to intervene in the case and after hearing, the Court, on August 10, 1952 entered its order that all further proceedings should be held in abeyance

pending another re-hearing by the Board of Appeals. On August 15, 1952 the Board of Zoning Appeals ceased to exist and its functions and powers were transferred to the County Board of Appeals, all pursuant to Chapter 15 of the laws of Montgomery County of 1952, adopted by the County Council under the authority of Section 5 (V) of Article 25A of the Code (1951 Ed.). In compliance with the order of the Circuit Court, the County Board of Appeals again heard the matter on October 25, 1952. On November 7, the Board denied the application. Thereafter, the Circuit Court rendered its opinion and Order of January 14, 1953, which reversed the decision of the County Board of Appeals and ordered that the application of Merlands Club, Inc. be granted. The appeal is from this Order.

The evidence on which the Board finally acted showed that the applicant set up as a non-profit organization, exempt from Federal Income Tax, had a charter, a constitution, and by-laws substantially identical with other well-known clubs in the area, such as the Chevy Chase Club, the Columbia Golf and Country Club, the Kenwood Golf and Country Club, the Edgemoor Club and the Prince Georges Golf and Country Club. It was to be managed by a board of trustees and its members were such trustees and such other persons as were to be elected to membership. Family memberships were to be limited to seven hundred fifty in number and single memberships to five hundred. The intial initiation fee for family membership was One Hundred Fifty Dollars and single membership was One Hundred Dollars. Dues have been set at One Hundred Fifty Dollars a year for family membership and One Hundred Dollars a year for single membership. Payment of the initiation fee and dues entitle members to all privileges and the use of all facilities of the club. There was to be a club house, a swimming pool, tennis courts, outdoor fireplaces, horseshoe pitching areas, picnic and play grounds, softball grounds, badminton greens, and shuffleboard equipment. Mr. Messall was to sell the property to a group who would then

lease it for five years (with an absolute right to buy) to the corporation which was to conduct the club.

The application was denied by the Zoning Board after the original hearing and after the first re-hearing, on the ground that the project was primarily a private business venture and did not come within the meaning of the term "private club", as used in the ordinance. Another reason given, although apparently this was a parrotting of the statute, was that the proposed use would not be in harmony with the zoning plan. The Maryland-National Capital Park and Planning Commission made no recommendation to the Board in connection with the original hearing, although, subsequently it did give a disapproving report. However, the rehearing was attended by its planning engineer, and as a result, the Park and Planning Commission staff made a detailed inspection of the property and examined all of the material facts in connection with the application and then issued a supplementary report, recommending that the Board ". . . defer action on (the) application and that all possibilities be explored thoroughly to establish a country club in the usual sense of the term as described above." Without waiting for the recommendation, which was to come from the Commission, the Board of Appeals, two days later, denied the second application. After the Circuit Court for Montgomery County remanded the case for the purpose of receiving additional evidence and the recommendation of the Planning Commission, the Commission made such a recommendation. Its substance was that the application be approved if the integrity of the project could be assured by conditions and restrictions which would allow revocation of the permit if not complied with. It found that the location and arrangement of the property made it ". . . ideal for the proposed use; . . ." and that "Density of population and lack of developed recreational facilities in this area, plus the steadily decreasing amount of open land available for any future recreational development, would make public acquisition of this property extremely de-

sirable. Short of this, the best solution would be to bring about the establishment and eventual acquisition of this club by an interested membership."

The Board, in its final opinion, did not agree and adhered to its previous position. It gave as a reason for denying the application, that even though Merlands is adjacent to a sparsely settled area, that area is being rapidly developed and is in the potential path of proposed sub-divisions of one-family houses. The Board then said, although this would seem to be a *non sequitur*: ". . . We find no facts to show that 'the need for the exception is of such urgency that injustice will result if the exception to the rule is not applied'." It had as another reason for denying the application, that it would not tend not to affect adversely the use and development of the neighboring properties and the general neighborhood. No facts are given as a basis for this negative conclusion except that traffic would be increased on Georgia Ave. and the lack of sewerage facilities might create a health and sanitation problem. The third reason given was that the statute does not define a "private club". It put aside the fact that Merlands Club, Inc. would be indistinguishable from all the other country clubs in the neighborhood by saying that country clubs had a statutory difference—a golf course is one of the requisites for a country club under the Montgomery County statute —while Merlands Club, Inc. would not have a golf course. It suggests that swimming pools, tennis courts, minature golf courses, locker accommodations, putting greens, snack bars and parking accommodations, as well as other proposed facilities, are available in the metropolitan area on a commercial basis, as well as on a non-profit basis, in the public parks. Although it did not find that this alone would prevent the applicant from being a private club, it concludes: "In any event, and irrespective of whether or not applicant constitutes a 'private club' within the meaning of the zoning regulation, the Board cannot make the findings necessary to grant this application."

We think that the Board misconstrued the law which controlled its functions and duties in passing on the application, that its conclusion was unsupported by any substantial evidence, and that the permit should have been granted.  This holding amounts to saying, in other words, that Section 13 g of Chapter 176 of the Montgomery County Code of 1950 is a valid and proper delegation of power to the Zoning Board.  This is so because there is no other provision of the Montgomery County zoning ordinance which would justify the establishment and maintenance of a private club in a residential area, and therefore, if the special exception provision, with which we are now dealing, was invalid, the action of the Board would have been right, although its reasons for acting, wrong.

The application was filed below on the assumption that Section 13 g was effective, and both sides below, as well as in this Court, proceeded on that assumption, which perhaps was an optimistic one in the light of holdings of this Court.  It has never been held since *Sugar v. North Baltimore Methodist Protestant Church,* 164 Md. 487, 165 A. 703, that the provisions for exceptions in the Baltimore City zoning ordinance are valid although several times we have assumed the validity of those provisions and held that the facts did not warrant the exception.  *Hoffman v. Mayor and C. C. of Baltimore,* 197 Md. 294, 79 A. 2d 367; and *Cassel v. Mayor and C. C. of Baltimore,* 195 Md. 348, 73 A. 2d 486.  What Section 13 g does is to delegate to the Zoning Board a limited authority to permit enumerated uses which the legislative body finds in effect *prima facie* properly residential, absent any fact or circumstance in a particular case which would change this presumptive finding.  The duties given the Board are to judge whether the neighboring properties and the general neighborhood would be adversely affected, and whether the use, in the particular case, is in harmony with the general purpose and intent of the zoning plan.  We think that these standards, as applied to the specific

uses enumerated in this Section, are sufficient on which to base a factual claim. *Yokley, Zoning Law and Practice,* Sec. 118; *Bishop v. Board of Zoning Appeals,* 133. Conn. 614, 53 A. 2d 659; *Potts v. Board of Adjustment,* 133 N. J. L. 230, 43 A. 2d 850; *Mayor and C. C. of Baltimore v. Biermann,* 187 Md. 514, 50 A. 2d 804; *Maryland Advertising Co. v. Mayor and C. C. of Baltimore,* 199 Md. 214, 86 A. 2d 169.

The Courts have often drawn distinctions between special exceptions and variances in zoning ordinances. *In Application of Devereux Foundation,* Zoning Case, 351 Pa. 478, 41 A. 2d 744, 746, the Court well stated the difference thus: "An 'exception' in a zoning ordinance is one allowable where facts and conditions detailed in the ordinance, as those upon which an exception may be permitted, are found to exist. But zoning ordinances usually provide, as does the present one, for another kind of dispensation, also permitted by the statute, by which a 'variance' from the terms of the ordinance may be authorized in cases where a literal enforcement of its provisions would result in unnecessary hardship." This was cited with approval in *Lukins v. Zoning Board of Adjustment of Ridley TP.,* 367 Pa. 608, 80 A. 2d 765, 767. See also *Heath v. Mayor and C. C. of Baltimore,* 187 Md. 296, 303, 49 A. 2d 799. The Montgomery County ordinance, like most of them, has a variance provision, as well as a special exception provision. Section 13 (3) of Chapter 176 of the Montgomery County Code provides that in those exceptional cases where the strict application of the general zoning law would result in peculiar practical difficulties or exceptional or undue hardship on the owner, the Board may authorize a variance, . . . "so as to relieve such difficulty or hardship."

It is the common practice to join an application for an exception with an application for a variance, leaving it to the Board to decide on which ground it will grant the application. As a result, many cases discuss exceptions and variances without differentiation, yet the two

do differ, and one important distinction is that where a specific use is permitted by the legislative body in a given area if the general zoning plan is conformed to and there is no adverse affect on the neighborhood, the application can be granted without a showing of hardship or other conditions which are necessary for the allowance of a variance. An exception such as that permitted by Section 13 g need only be in the scope of the authorization spelled out in the ordinance and constitute a proper exercise of the board's sound discretion. In *Reed v. Board of Standards and Appeals,* 255 N. Y. 126, 174 N. E. 301, 303, the Court differentiated between the exception provision and the variance provision in the ordinance. It said that when the application is made under the exception provision: ". . . the field of inquiry is restricted. It is not necessary to allege or prove the facts required when the application is made under section 21 . . ." (the variance section ). It added, speaking of exceptions, that: "The board must in each case act on some reasonable basis in harmony with the general purpose of the resolution. Nothing more is required." See also *Hannigan v. Murdock,* 47 N. Y. Supp. 2d 855, 858; *Stone v. Cray* 89 N. H. 483, 200 A. 517, 521; *Lukins v. Zoning Board, etc., supra; Appeal of Borden, et al.,* 369 Pa. 517, 87 A. 2d 465, 466; *Bishop v. Board of Zoning Appeals, supra; Harrison v. Zoning Board of Review,* 1948, 74 R. I. 135, 59 A. 2d 361; *Dunham v. Zoning Board of Town of Westerly,* 1942, 68 R. I. 88, 26 A. 2d 614, 616, 617. In this last case, the controlling ordinance and the factual situation were quite similar to this case. In *Mayor and C. C. of Baltimore v. Biermann, supra,* and *Maryland Advertising Co. v. Mayor and C. C. of Baltimore, supra,* it is pointed out that in the case of passing on applications for an exception of the type with which we are dealing, the function of the zoning board is original rather than appellate. Mr. *Bassett,* in his work on *Zoning,* deals with this, as well as the difference between variance and exception, on

pages 125 and 126, and agrees with the conclusions of the cases cited in this paragraph.

This Court has in several cases assumed the validity of deviation from the general zoning plan, although finding that the facts did not justify its exercise in the particular case, and in *Mayor and C. C. of Baltimore v. Byrd,* 191 Md. 632, 638, 62 A. 2d 588, 591, said: "The appellants contend that the Mayor and City Council may, in a proper case, exercise the power of making exceptions, and we agree that they have the power, provided the conditions are such as would justify its exercise."

We conclude that this is "a proper case" and that "the conditions are such as would justify" the exercise of the power. Under the legislative enumeration of Section 13 g, private clubs are *prima facie* to be permitted in a residential use area. The applicant for such a use need not show either practical difficulty, unnecessary hardship, or great urgency, but only that the project is a private club and that it would be in general harmony with the zoning plan and would not adversely affect the neighboring properties and the general neighborhood. The County Board of Appeals misconstrued the legal basis for the exercise of its functions and duties when it decided there must be urgent necessity to justify the granting of the application, and great injustice if it were denied. The applicant, like the Board, urges the rule of urgent necessity, unnecessary hardship, and injustice to justify the granting of the application, citing *Heath v. Mayor and C. C. of Baltimore,* 187 Md. 296, 49 A. 2d 799, *supra; Heath v. Mayor and C. C. of Baltimore,* 190 Md. 478, 58 A. 2d 896; *Gleason v. Keswick Improvement Association,* 197 Md. 46, 78 A. 2d 164; *Mayor and C. C. of Baltimore v. Byrd,* 191 Md. 632, 62 A. 2d 588, supra; and *Easter v. Mayor and C. C. of Baltimore,* 195 Md. 395, 73 A. 2d 491. There is a distinction between the facts and the ordinance provisions which governed in those cases and the facts and the

ordinance provision in this case, which makes the decisions in those cases not applicable here.

We see in the record no evidence which would rationally permit a finding that the applicant was not a private club and indeed, the Board made no such express or explicit finding in its final opinion. As we have noted, in the first two opinions it based its denial on the ground that the application was a commercial venture. In the final opinion, it incorporated all evidence in prior hearings and left no doubt in the mind of the reader familiar with the history of the case that its fear that the venture would be a commercial venture rather than a private, non-profit undertaking, as a club must be, still pervaded its thought, and influenced, if not controlled, its decision. The fear or impression of the Board on this point is not based on any fact in evidence, or otherwise available to it. There was no substantial evidence on which the Board could base its decision that the existence of the club in the residential area would not be in harmony with the general surrounding area. The Montgomery County zoning ordinance in Section 3 of Chapter 176 expressly permits in an "A" Residence zone, a "public park or playground". It is not disputed in the case that there is a real and growing need in the area for recreational facilities of a type which the club would provide. The Park and Planning Commission had two proposed recreational areas (one of twenty acres) in this very district, which were still in the planning or paper stage. These admitted facts nullify the statement of the Board that the proposed use would be adverse to the neighboring properties and the general neighborhood, in the absence of any other evidence whatever that such would be the case.

The Board's objections on the ground of traffic hazards, are answered by the showing that Georgia Avenue is to be widened to eighty feet and that the entrance way to the club is to be made entirely adequate for the ingress and egress of all contemplated traffic. The sewerage problem certainly could be left to the control of the

Health Department of the County and the State, which it is to be presumed would not permit unhealthful or unsanitary conditions to exist.

We think it unnecessary to pass on whether the Board in the granting of an application under Section 13 g can impose conditions and restrictions. It is expressly given this power in other parts of Chapter 176 of the Montgomery County Code, although not in Section 13 g. The fears which the Board seemingly had (which the Planning Commission shared to some extent) that the project, although in conception and form a country club, would in substance and operation be a commercial property, would seem to us to be groundless, in the first place, and to present no problem if they should happen to be well founded. A 1952 Amendment to the Zoning Ordinance, classified as Section 13 (26) of Chapter 176 of the Montgomery County Code, 1952 Supplement, reads: "Whenever the Board of Zoning Appeals shall find, in the case of any permit heretofore or hereafter granted pursuant to the provisions of this section, that any of the terms, conditions, or restrictions upon which such permit was granted are not being complied with, the Board shall rescind and revoke such permit after giving due notice to all parties concerned and granting full opportunity for a public hearing." The permit in this case would be granted on the representation and condition that the property was to be used as a private club, comparable to the country clubs, upon which its set up was modelled, and if there was future substantial deviation from this plan which changed its nature or operation as a private club, the Board under this section of the 1952 Amendment could rescind and revoke the permit.

We are fully mindful of the fact that the decision of the Board as an administrative body is entitled to the greatest weight and to a real presumption of validity, and with this awareness, we do not substitute our judicial judgment for the judgment of the administrative authority acting within its powers. As pointed out in *Maryland Advertising Co. v. Mayor and C. C. of Balti-*

*more, supra,* 199 Md. at 222, 86 A. 2d at 173, this duty ". . . is no more imperative than the power and duty to set aside any purported exercise of such power which is in fact arbitrary, capricious or confiscatory. Zoning in this respect can no more escape judicial review than any other purported exercise of the police power." We find here that the action of the Board, based on an incorrect legal premise and unsupported by substantial evidence, if any, was arbitrary and capricious in a legal sense, and so, invalid. We agree with the Court below that ". . . the Board's decision is based upon an erroneous interpretation of our ordinance and does not conform to the facts." The Order of the Circuit Court for Montgomery County dated January 14, 1953 is affirmed.

*Order affirmed, with costs.*